IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**


Civil Action No. 08-cv-00198-PAB-MJW

LANGSTON D. HULL, D.V.M., PH.D.,

      Plaintiff,

v.

COLORADO BOARD OF GOVERNORS OF THE COLORADO STATE
      UNIVERSITY SYSTEM, as governing body of COLORADO STATE
      UNIVERSITY,
LARRY EDWARD PENLEY, individually,
ANTHONY FRANK, PH.D., individually and in his official capacity,
LANCE PERRYMAN, individually and in his official capacity,
STEPHEN A. BENJAMIN, DVM, PH.D., individually and in his official capacity,
PATRICK J. BRENNAN, PH.D., individually and in his official capacity,
CAROL D. BLAIR, PH.D., individually and in her official capacity,
JOHN T. BELISLE, PH.D., individually and in his official capacity,
ROBERT P. ELLIS, PH.D., individually and in his official capacity,
BARRY J. BEATY, PH.D., individually and in his official capacity,
JULIA M. INAMINE, PH.D., individually and in her official capacity,
JEFFREY WILUSZ, PH.D., individually and in his official capacity,
EDWARD A. HOOVER, DVM, PH.D., individually and in his official capacity,
ANNE C. AVERY, DVM, PH.D., individually and in her official capacity,
ROSELYN CUTLER, individually,
JOHN D. ROOT, ESQ. and
WICK & TRAUTWEIN, LLC,

      Defendants.

_____

**ORDER**
_____


      This matter is before the Court on the State Defendants' Motion to Dismiss

Plaintiff's Third Amended Complaint [Docket No. 136].[1]  The motion is fully briefed and

_____

      [1]The "State Defendants" are the Colorado Board of Governors of the Colorado
State University System (as governing body of Colorado State University), Larry Edward
Penley, Anthony Frank, Lance Perryman, Stephen A. Benjamin, Patrick J. Brennan,

ripe for disposition.

## I. BACKGROUND[2]

In 2001, certain members[3] of the Program and Oversight Committee of the Rocky Mountain Regional Center of Excellence ("RCE"), the Management and Oversight Committee, and the Program and Oversight Committee ("RCE Committees") at Colorado State University ("CSU") submitted a grant application to the National Institute of Allergies & Infectious Diseases ("NIAID").  The grant was not funded, at least in part, because of a lack of minority participation in the proposed project. Following the denial of the application, members of the RCE Committees agreed to recruit a minority scientist to join both the Department of Microbiology, Immunology, and Pathology ("MIP") and the Rocky Mountain RCE at CSU.  Defendants Frank, Brennan, Belisle, Ellis, Beaty, and Inamine were members of the RCE Committees.  Defendant Benjamin was the Department Head of the MIP at the time.  He appointed defendant Avery to serve on the selection committee for the prospective hiring of a minority scientist.

Plaintiff Langston D. Hull, D.V.M., Ph.D., received his Ph.D. in Microbiology from Louisiana State University in 2002.  Defendants Benjamin, Brennan, and Blair recruited plaintiff for the position in the MIP.  They promised him support for his research

_____

Carol D. Blair, John T. Belisle, Robert P. Ellis, Barry J. Beaty, Julia M. Inamine, Jeffrey Wilusz, Edward A. Hoover, Anne C. Avery, and Roselyn Cutler.

[2]The following facts are drawn from plaintiff's Corrected Third Amended Complaint [Docket No. 147].

[3]Plaintiff alleges that defendants "Barry Beaty *and/or* John Belisle" submitted the grant application.  Docket No. 147 at 9, ¶ 32 (emphasis added).

program, which was to be included in the grant proposals, and that he would serve as the liaison between CSU and the Centers for Disease Control and Prevention ("CDC") facility in Fort Collins, Colorado.  Defendants knew that the research plaintiff planned on conducting required a Biosafety Level 3 ("BSL-3") laboratory and Select Agent Registration with the CDC.  Plaintiff was offered a one-year appointment, with the potential for reappointment, as a Research Scientist at CSU.  Plaintiff accepted the offer of employment in January of 2003 and began his employment on February 1, 2003.

Plaintiff was unable, however, to engage in his research program upon arrival at CSU.  Defendants had not arranged for Select Agent Registration.  Plaintiff therefore worked with defendant Ellis, the Chief Biosafety Officer, to obtain the Select Agent Registration, a process that ultimately was not completed until November 2003.  Upon its completion, however, plaintiff was not able to begin work because defendant Belisle had not prepared required Standard Operating Procedures ("SOPs") for the BSL-3 laboratory.  In the interim, instead of being placed in an appropriate laboratory for his microbiology research, plaintiff was assigned to work in the immunology laboratory of defendant Anne C. Avery, a professor at CSU.  Working in Avery's laboratory isolated plaintiff from collaborators and mentors in his area of expertise.  Defendant Brennan, a professor and member of the Management and Oversight Committee of the Rocky Mountain RCE, told plaintiff the assignment to Avery's laboratory would be temporary. While working in the laboratory, defendant Avery expressed hostility toward plaintiff, saying to him: "You don't even and never had a chance at a long term position here," and "get it out of your mind that you were brought here to fulfill a void in the department;

3

we don't need you here   . . ."  Docket No. 147 at 14, ¶ 65.  Furthermore, defendant

Avery joked with other faculty members about the circumstances surrounding plaintiff's

recruitment.

In January 2004, defendant Jeffrey Wilusz, who was the head of the MIP at the

time, proposed that Hull's employment contract be renewed.  Despite assurances that

Hull would be able to pursue his independent research, defendants Wilusz, Avery, and

Edward A. Hoover, who currently serves as the head of MIP, assigned Hull to a position

requiring that he spend approximately 75% of his time on Avery's research.  Moreover,

defendants prevented Hull from gaining the access to a BSL-3 laboratory required for

him to conduct his research.

The lack of support for plaintiff's research agenda continued.  Hull applied for a

grant ("K08 grant") from the National Institutes of Health ("NIH") on September 31,

2004.  The grant review committee believed Hull to be an "excellent candidate," Docket

No. 147 at 17, ¶ 77, but defendants Wilusz, Hoover, and/or Avery expressed the view

that he was not.  That lack of support by his colleagues was cited by the NIH as a

weakness in plaintiff's application.  The grant review committee also cited a lack of

focus to his research, which Hull contends resulted from the requirement that he spend

so much time working for Avery.

Upon renewal of Hull's contract in January 2005, defendants Wilusz, Hoover,

and Avery determined that Hull would not resubmit his K08 grant application and would

instead spend all of his time on Avery's research.[4]  Yet his January 11, 2005 renewal

---

[4]Hull alleges that upon his renewal he did not realize that defendants did not
intend to support his research.  Yet, Hull also alleges that he was informed of the

letter stated that "the MIP Department remains sincerely interested in assisting [Hull's] professional development and [his] establishment of an independent research program." Docket No. 147 at 18, ¶ 85. The letter also informed Hull that he would be eligible for reappointment if he were able to find funding.

In January 2005, Hull began working on his own research after hours and on weekends. While Hull was working full time for Avery and engaging in his after hours research, the Rocky Mountain RCE received a $40 million grant in June 2005 from NIAID based, in part, on the fact that defendants wrote Hull into the application as a minority participant.

Hull achieved a breakthrough in his research in August 2005 and, by September 2005, believed that he had enough data to resubmit his K08 grant application. Defendant John T. Belisle, a professor and the director of the Program and Oversight and Management and Oversight Committees of the Rocky Mountain RCE, agreed to mentor Hull during the resubmission process. Belisle and Wilusz reviewed drafts of the application during September and, on September 28, 2005, Belisle and defendant Julia M. Inamine, a professor and member of the Management and Oversight Committee of the Rocky Mountain RCE, both signed a letter supporting Hull's K08 grant application. Belisle, however, then changed his mind and withdrew his support of the application.[5] Belisle also denied that he had ever agreed to mentor plaintiff. Without faculty support,

_____

expectation that he spend all of his time on Avery's research.

[5]Hull identifies a white faculty member who was not as strong a candidate for research funding who did receive faculty support for grant applications and has since attained tenure.

Hull could not resubmit his application.

On September 23, 2005, Wilusz told Hull that Hoover and Avery had "little enthusiasm" for having him continue on the grant which funded his year to year employment.  Upon realizing that he would not be funded past January 2006, Hull began searching for alternative funding.  Wilusz showed outward support for that effort while discouraging MIP faculty members from providing support to Hull.[6]

No later than October 2005, Hull believed he "was being treated less favorably than other similarly situated scientists at MIP."  Docket No. 136-2 (EEOC Charge of Discrimination) at 3.  He reported his concerns to the Assistant Provost, Thomas Gorell.  Dr. Gorell told Wilusz to treat Hull fairly.

Hull continued to work on his research and began preparing two manuscripts.  He was unable, however, to complete two necessary experiments prior to the termination of his appointment on January 31, 2006.  Wilusz denied Hull's request for a two-week unpaid extension in order to complete the two experiments.[7]  When Hull

---

[6]Plaintiff includes in his complaint a comment by an MIP faculty member that it was "going to be difficult for [Hull] to find a place and get support for [his] research and funding," because "[e]xcept for a few Asians, the upper tiers of science are dominated by white males."  Docket No. 147 at 21, ¶ 107.  Plaintiff does not bring claims against that individual.

[7]Although plaintiff alleges that he was told to turn in his keys and leave campus "unexpectedly and without prior notice," the allegations of the complaint and substance of his EEOC Charge of Discrimination make clear that he was on notice that, having failed to attain outside funding, his employment was scheduled to terminate on January 31, 2006.  Although the chronology is a bit unclear in his Charge of Discrimination, he does indicate that he started the internal EEO complaint process "[i]n or about January 2006."  Docket No. 136-2 at 3.  The complaint, however, alleges that the process did not begin until sometime in February 2006.  In either case, plaintiff first complained of unfair treatment in October 2005.  *See* Docket No. 147 at 23, ¶ 117.

informed Gorell of his termination as of January 31, 2006, Gorell said, "I told [Wilusz] to take care of this, but it looks like he didn't."  Docket No. 147 at 23, ¶ 120.  Gorell told Hull on February 3, 2006 that he believed the problem "went deeper" and advised Hull to contact Roselyn Cutler in CSU's Office of Equal Opportunity and Diversity ("OEOD"). Hull thereafter provided a letter to defendant Larry Edward Penley, the President of the University, describing the unfair treatment and requesting that Penley intervene.[8]  Hull met with Cutler on February 7, 2006 to report his complaints of race discrimination in the MIP.  On July 15, 2006, he filed a grievance with the OEOD.  Cutler issued a report of her findings on February 6, 2007, which was reviewed and accepted by defendant Anthony Frank, the CSU provost and a member of the Program and Oversight Committee of the Rocky Mountain RCE, on March 5, 2007.  After plaintiff's contract terminated on January 31, 2006, plaintiff alleges that "Brennan, Hoover and/or Avery" provided false job references to potential employers of plaintiff.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 12, 2007, which he thereafter amended on September 26, 2008.  The EEOC issued plaintiff a Notice of Right to Sue on February 3, 2010, and plaintiff initiated the present action on January 30, 2008.

## II.  STANDARD OF REVIEW

In their motion, the State Defendants invoke Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in

---

[8]Penley never responded to the letter.

the complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms:

"[t]he moving party may (1) facially attack the complaint's allegations as to the existence

of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by

presenting evidence to challenge the factual basis upon which subject matter

jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074

(10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).

When resolving a facial attack on the allegations of subject matter jurisdiction, the Court

"must accept the allegations in the complaint as true."  *Holt v. United States*, 46 F.3d

1000, 1002 (10th Cir.1995).  To the extent the State Defendants attack the factual basis

for subject matter jurisdiction, the Court "may not presume the truthfulness of the

factual allegations in the complaint, but may consider evidence to resolve disputed

jurisdictional facts."  *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir.

1997).  "Reference to evidence outside the pleadings does not convert the motion to

dismiss into a motion for summary judgment in such circumstances."  *Id.*  Ultimately,

and in either case, plaintiff has "[t]he burden of establishing subject matter jurisdiction"

because he is "the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*,

518 F.3d 1186, 1189 (10th Cir. 2008).  In this case, the Court can determine whether

there is subject matter jurisdiction by reference to the allegations in the third amended

complaint [Docket No. 147] and the contents of the EEOC Charge of Discrimination

referenced therein.  *See* Docket No. 147 at 8, ¶ 27.

As for Rule 12(b)(6), the "court's function . . . is not to weigh potential evidence

that the parties might present at trial, but to assess whether the plaintiff's Complaint

8

alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  "In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  A court, however, need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (omission marks, internal quotation marks, and citation omitted).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the

9

material elements necessary to sustain a recovery under some viable legal theory."

*Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).  "In addition to the

complaint, the court may consider documents referred to in the complaint if the

documents are central to the plaintiff's claim and the parties do not dispute the

documents' authenticity."  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.

2002); *see* Docket No. 147 at 8, ¶ 27.

## III.  DISCUSSION

Plaintiff asserts ten claims for relief, eight of which are the subject of the State

Defendants' motion to dismiss.[9]

### A.    Racial Discrimination and Retaliation (42 U.S.C. §§ 1981, 1983 and the Equal Protection Clause)

#### *1.  Subject Matter Jurisdiction over Official Capacity Defendants*

The State Defendants seek dismissal of plaintiff's first claim for relief for lack of

subject matter jurisdiction to the extent plaintiff seeks to recover damages from

defendants Frank, Perryman, and Wilusz in their official capacities.  The Eleventh

Amendment bars suits in federal court against a state by its own citizens.  *See Edelman*

*v. Jordan*, 415 U.S. 651, 662-63 (1974); *Henderson v. Jones*, 378 F. App'x 808, 809

(10th Cir. 2010) ("[T]he district court correctly concluded that to the extent that [the

plaintiff] has raised claims for monetary damages against the defendants in their official

capacities, such claims are barred by the Eleventh Amendment.").  The immunity

conferred by the Eleventh Amendment extends to a state and its instrumentalities,

_____

[9]Plaintiff's ninth and tenth claim for relief, which allege professional negligence, are brought against defendants John D. Root and Wick & Trautwein, LLC, respectively.

including state agencies.  *See Northern Ins. Co. of New York v. Chatham County, Ga.*, 547 U.S. 189, 193 (2006); *Meade v. Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (immunity extends to the state, its instrumentalities, and its officers in their official capacities).  Colorado has not waived its Eleventh Amendment immunity.  *See Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (holding that Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101, *et seq.*, does not waive the State's Constitutional immunity; affirming dismissal of claims against the State and its Department of Corrections).  Nor has Congress abrogated state sovereign immunity for claims brought under 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 341 (1979), or § 1981.  *See Robinson v. Bd. of Regents of Univ. of Colo.*, 390 F. Supp. 2d 1011, 1016 (D. Colo. 2005) ("[I]t is well-settled in the Tenth Circuit that Congress did not waive states' Eleventh Amendment immunity through . . . § 1981.") (citations omitted).

Therefore, the Court may not exercise subject matter jurisdiction over plaintiff's first claim to the extent it seeks monetary relief against defendants Frank, Perryman, and Wilusz for actions taken in their official capacities.  *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000).  With that said, the State "Defendants do not contest that reinstatement generally is an available equitable remedy."  Docket No. 143 at 4.  Consequently, the Court is permitted to exercise subject matter jurisdiction to the extent the complaint requests such prospective injunctive relief.  *See Quern*, 440 U.S. at 337 ("[A] federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law [pursuant to *Ex parte Young*, 209 U.S. 123 (1908)].).

## 2.  Statute of Limitations

The State Defendants contend that plaintiff's first claim, which is brought pursuant to § 1981 and § 1983 of Title 42 of the United States Code, must be narrowed due to the relevant statutes of limitations.  For the following reasons, the Court finds that plaintiff's § 1983 cause of action is completely barred and that his § 1981 cause of action is partially barred by the applicable statutes of limitations.

"State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims."  *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999).  Therefore, in this case, plaintiff's § 1983 claim is subject to a two-year statute of limitations.  *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which suit is brought . . . shall be commenced within two years."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994) (finding that "§ 1983 claims are best characterized as personal injury actions and we therefore apply" the State of Colorado's two-year statute of limitations (citation omitted)).  Federal law, however, "governs the time of accrual of § 1983 claims."  *Beck*, 195 F.3d at 557.  Plaintiff's § 1983 claim "accrued when [he] knew or should have known that his constitutional rights had allegedly been violated."  *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (unpublished) (citing *Beck*, 195 F.3d at 557).

Plaintiff filed the present action on January 30, 2008.  Defendants argue that, although plaintiff's final day of employment was January 31, 2006, he knew the facts

12

supporting his § 1983 claim well before that time.   The complaint alleges that, on

September 23, 2005, he received notice that his training grant would not be continued

in 2006.   The only cognizable conduct that occurred within the two-year time period is

Wilusz's denial of an extension of two weeks on January 31, 2006 and State

Defendants' subsequent failure to reinstate him.   Those decisions, however, were

refusals to alter the earlier decision.   *See Haynes v. Level 3 Communications, LLC*, 456

F.3d 1215, 1228 (10th Cir. 2006) ("An employer's refusal to undo a discriminatory

decision is not a fresh act of discrimination.") (citation omitted).   The complaint and

Charge of Discrimination make clear that plaintiff was aware of all the relevant facts,

and the impending expiration of his contract, before January 30, 2006.   Indeed, the

complaint alleges no facts that indicate he discovered anything on or after January 30,

2006 that is relevant to the accrual of his § 1983 claim.   In fact, plaintiff complained of

the unfair treatment in October 2005, shortly after he was notified that his grant would

not be renewed.   Plaintiff was well aware of the allegedly discriminatory decisions not to

renew his contract or to support his applications for outside grants before January 30,

2006.   That the consequences of those decisions were not felt until his employment

actually terminated on January 31, 2006 does not serve to toll the statute of limitations.

*See Chardon v. Fernandez,* 454 U.S. 6, 8 (1981) (§ 1983 claims brought by non-

tenured faculty accrued on date plaintiffs were informed their appointments would be

terminated and not on the dates the appointments did in fact later terminate).   Section

1981 claims based upon the formation of an employment contract are also subject to a

two-year statute of limitations.   *See Cross v. Home Depot*, 390 F.3d 1283, 1288 (10th

Cir. 2004).   Therefore, plaintiff's § 1981 claim is also barred as untimely to the extent it

13

is based upon the formation of his employment contract.

However, the parties agree that a four-year statute of limitations applies to § 1981 actions relating to post-formation conduct.  Therefore, plaintiff's § 1981 claim survives to the extent it is based on post-formation conduct occurring within four years of the initiation of this action.

### 3.  Personal Participation

The State Defendants argue that, to the extent plaintiff's first claim is not otherwise barred by the statute of limitations, *see supra*, plaintiff has failed to adequately allege personal participation in the alleged constitutional violation by certain of the thirteen individual defendants named in plaintiff's first claim for relief.  As an initial matter, the State Defendants do not argue that the claim fails to adequately allege personal participation by defendants Wilusz, Brennan, Hoover, and Avery.  *See* Docket No. 136 at 9-10; Docket No. 143 at 5 (where the State Defendants assert, after addressing the pleading deficiencies as to the nine remaining defendants, that "[o]nly Plaintiff's §§ 1983 and 1981 claims against individual Defendants who actively participated in Plaintiff's employment decisions should proceed").[10]

As for the remaining individual defendants, "[p]ersonal participation is an essential element of any individual liability claim under §§ 1981 or 1983 against a government official."  *Atwell v. Gabow*, Nos. 06-cv-02262-JLK, 07-cv-2063-JLK, 2008

---

[10]Plaintiff contends that "[d]efendants do not dispute that the [complaint] alleges facts sufficient to state claims against Wilusz, Brennan, Hoover, Avery *and Cutler*, and the §§ 1981 and 1983 claims against them should not be dismissed."  Docket No. 138 at 11 (emphasis added).  Plaintiff, however, does not seek to recover from defendant Cutler pursuant to §§ 1981 and 1983.  *See* Docket No. 147 at 8.

WL 906105, at *8 (D. Colo. March 31, 2008) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)); *cf. Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988) (stating that before liability may be imposed, a supervisor must have "participated or acquiesced" in the conduct which constitutes a constitutional deprivation).   In assessing whether allegations are sufficient to provide the State Defendants notice pursuant to Federal Rule of Civil Procedure 8, "context matters."   *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (alteration and quotation marks omitted).   As the *Robbins* court stated in regard to section 1983 cases,

> defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249-50 (emphasis in original); *see Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).   As explained below, the Court agrees with the State Defendants that plaintiff's first claim for relief fails as to defendants Ellis, Inamine, Penley, Frank, Perryman, Beaty, Blair, Benjamin, and Belisle.

In regard to defendant Robert P. Ellis, a CSU professor and member of the Management and Oversight Committee and chair of the Biosafety and Select Agent Subcommittee of the Rocky Mountain RCE, plaintiff's only allegation is that he was "instructed to work with Chief Biosafety Officer, Defendant Ellis, to obtain Select Agent Registration," Docket No. 147 at 13, ¶ 55, and that "Ellis failed to timely submit Dr. Hull's Select Agent Registration."   Docket No. 147 at 30, ¶ 163.   As an initial matter, the allegations relate to conduct outside the four-year statute of limitations.   That Ellis

submitted Hull's Select Agent Registration in an untimely manner does not support an inference that he discriminated against Hull on account of his race.  The only other allegations concerning defendant Ellis group him with other State Defendants who were on certain committees without identifying what he is alleged to have done to violate plaintiff's constitutional rights.  *See VanZandt v. Okla. Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008) (unpublished) (noting that "plaintiffs under the *Twombly* standard must do more than generally use the collective term 'defendants'" but rather must "differentiate between the actions of each individual defendant and the actions of the group as a whole").  Plaintiff essentially pleads that membership on the committees, in the absence of any other allegations, is sufficient to support the inference of liability. As noted above, however, the Tenth Circuit has emphasized that "'[c]ontext matters in notice pleading.'"  *Robbins*, 519 F.3d at 1248.

Similarly, in regard to defendant Julia M. Inamine, a CSU professor and member of the Management and Oversight Committee of the Rocky Mountain RCE, plaintiff attempts to support an inference of discrimination by alleging her membership on certain committees.  The only other allegation is that defendant "Inamine cosigned a letter in support of Dr. Hull's K08 grant resubmission."  Docket No. 147 at 19, ¶ 93.  The Court fails to see how defendant Inamine's support of his application in any way furthers plaintiff's claim against her.  By naming the entire membership of the respective committees, plaintiff appears to be engaging in an impermissible "fishing expedition," hoping that he will eventually be able to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Rodriguez v. Quality Loan Service Corp.*, 2010 WL 1644695, at *2 (D. Ariz. Apr. 22, 2010) (stating that "plaintiff

16

must plead 'enough facts to state a claim to relief that is plausible on its face'" at the pleading stage and "cannot use discovery to conduct a fishing expedition in hope that some fact supporting an allegation will be uncovered") (quoting *Twombly*, 550 U.S. at 570).

The only allegation regarding defendant Larry Edward Penley, the President of the University and Chancellor of the Colorado State University System, is that he received a letter regarding the mistreatment after the fact and failed to respond. *See* Docket No. 147 at 24, ¶¶ 126-27. This does not amount to "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quotation and brackets omitted). There are no facts alleged that would permit the Court to infer that there was any causal connection between Penley's failure to respond to the letter and the alleged constitutional violations in this case or that would support the requisite state of mind. *See Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (stating that "plaintiffs [must] prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation").

Plaintiff's allegations regarding defendant Anthony Frank, the University Provost and a member of the Program and Oversight Committee of the Rocky Mountain Regional Center of Excellence, are also insufficient. Plaintiff alleges that defendant Frank, in addition to being a committee member, approved plaintiff's initial hire. As discussed above, a § 1981 contract formation claim is untimely. Furthermore, plaintiff alleges no facts that would support the inference that Frank's decision to hire him was

17

discriminatory in any event.  Plaintiff also alleges that defendant Frank "rubber stamped" Cutler's findings, but provides no facts in support of that characterization. *See* Docket No. 147 at 24, ¶ 125.  All other allegations lump Frank together with a number of other State Defendants or simply rely on his supervisory position.  *See, e.g.*, Docket No. 147 at 34.[11]

The complaint fails to allege personal participation by defendant Lance Perryman, dean of CSU's College of Veterinary Medicine & Biomedical Sciences. Plaintiff makes the untimely allegation that Perryman, like Frank, approved his initial hire.  Furthermore, plaintiff supplies no facts to support the inference that Perryman did so as part of a discriminatory scheme.  Plaintiff also avers that Perryman refused to support plaintiff's attempts to receive outside funding in late 2005.  The complaint contains no factual allegations that would support the inference that Perryman's lack of support had a discriminatory basis.   Otherwise, plaintiff's allegations regarding Perryman either lump him together with groups of other State Defendants or rely exclusively on his supervisory status.[12]

Plaintiff attempts to support his civil rights claim against defendant Barry J. Beaty, a professor at CSU, with Beaty's membership on the Program and Oversight Committee of the Rocky Mountain RCE.  He also lumps Beaty together with others who failed to provide him with bridge funding in late 2005.  For the reasons discussed

---

[11]The Court notes that the allegations regarding his supervisory responsibilities are not incorporated into plaintiff's § 1981 claim.

[12]Like the allegations regarding Frank, the complaint's averments regarding Perryman's supervisory role are not actually incorporated into the § 1981 claim.

above, such conclusory and undifferentiated allegations are insufficient to state a claim

against him.  *See Robbins*, 519 F.3d at 1247 ("[I]f [allegations] are so general that they

encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not

nudged their claims across the line from conceivable to plausible.'") (quoting *Twombly*,

550 U.S. at 570).  Plaintiff's allegations against defendant Carol Blair, the interim head

of the MIP and a member of the Management and Oversight Committee and Training

Education and Outreach Subcommittee of the Rocky Mountain RCE, also fail for not

providing any notice as to what plaintiff believes she did that resulted in the violation of

his constitutional rights.

Plaintiff has failed to state a claim against defendant Stephen A. Benjamin, a

professor emeritus at CSU who was the interim chair of MIP until about June 2003.

Plaintiff alleges that Benjamin appointed the selection committee that hired him.

Plaintiff also avers that Benjamin offered him the position and assured plaintiff that he

would receive institutional support.  The complaint lacks any allegations that support the

inference that defendant Benjamin made these statements to advance a discriminatory

plan.  Furthermore, and in any event, these statements were made as part of plaintiff's

initial recruitment and, therefore, may not support a timely § 1981 claim regarding the

formation of the employment contract.

As for defendant John T. Belisle, a CSU professor and director and member of

the Program and Oversight and Management and Oversight Committees of the Rocky

Mountain RCE, plaintiff alleges that Belisle failed to prepare the required SOPs for the

BSL-3 laboratory plaintiff needed for his research.  *See* Docket No. 147 at 13, ¶ 58.

This failure, however, occurred more than four years prior to plaintiff initiating this

action.  *See id.*  Furthermore, the complaint lacks any non-conclusory allegations that indicate Belisle's failure to prepare the SOPs was discriminatory.  Plaintiff also alleges that Belisle suddenly withdrew support for his grant application in September 2005 and lied about having ever agreed to mentor plaintiff in that process.  *See* Docket No. 147 at 19, ¶ 94.  Plaintiff fails to allege facts, however, that connect this conduct to any discriminatory intent.  Although plaintiff contends that Wilusz discouraged other State Defendants, including Belisle, from supporting plaintiff's grant applications, there is no support in the complaint for the inference that Belisle was somehow aware of Wilusz's discriminatory motives.

For the foregoing reasons, the Court finds that plaintiff's § 1981 claim for post-contract formation conduct fails to allege personal participation by defendants Ellis, Inamine, Penley, Frank, Perryman, Beaty, Blair, Benjamin, and Belisle.

### 4.  Qualified Immunity

Although they concede that the complaint adequately alleges their personal participation in the conduct alleged, defendants Wilusz, Brennan, Hoover, and Avery assert the defense of qualified immunity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis.  *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008).  Under

the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007).

Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "A plaintiff can demonstrate that a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).[13] However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary

---

[13]In *Prison Legal News, Inc. v. Simmons*, 401 F.Supp.2d 1181, 1189-90 (D. Kan. 2005), the court noted that the quoted language "from other circuits" appears to be a misquote of the Tenth Circuit's decision in *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), where the court used the language "from other courts." That misquote first appeared in *Murrell v. School District No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999), and has since appeared repeatedly in Tenth Circuit cases. The *Prison Legal News* court, though concluding that the "misquote was merely a scrivener's error" and was not meant as a substantive change to the legal standard, added that "the fact that this error has not been discussed in a reported case from the Tenth Circuit suggests that the error may not be very significant." 401 F. Supp. 2d at 1191. "In other words, although the circuit may be willing to consider cases from courts beyond the federal appellate courts, the focus should normally be on cases decided by other circuits." *Id.*

authority can be distinguished." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

The Court may exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances. *Pearson v. Callahan,* 553 U.S. 223, 129 S.Ct. 808, 818 (2009).   Here, the Court will first address whether plaintiff has alleged a violation of § 1981.

Section 1981 of Title 42 of the United States Code provides that everyone, regardless of race, will have the same right, *inter alia*, to make and enforce contracts. *See* 42 U.S.C. § 1981(a).[14]  "To establish a § 1981 claim, a plaintiff must show that: (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; (3) the discrimination interfered with a protected activity as defined in Section 1981, i.e., the making or enforcing of a contract."   *Kelley v. New York Life Ins. and Annuity Corp.*, No. 07-cv-01702-LTB-BNB, 2008 WL 1782647, at *4 (D. Colo. April 17, 2008) (citing *Hampton v. Dillard Dep't. Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001)).  As noted above, State Defendants do not argue that the complaint fails to allege personal participation by defendants Wilusz, Brennan, Hoover, and Avery, but instead argue that the allegations against them are insufficient to support the inference that their conduct was racially motivated, as required to establish a § 1981 claim.  In regard to defendant Brennan, the Court concludes that the only timely allegations against him regarding the allegedly discriminatory scheme are largely conclusory and undifferentiated in the manner of

---

[14]*See* 42 U.S.C. § 1981(b) ("For purposes of this section, the term make and enforce contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

those alleged against the nine defendants discussed above.  Nothing in the complaint's
allegations would support the inference that defendant Brennan's conduct was
motivated by racial animus.  Therefore, the Court agrees with State Defendants that
plaintiff's § 1981 claim for race discrimination may not proceed against defendant
Brennan.[15]

As for defendants Wilusz, Avery, and Hoover, the complaint alleges that they
hired plaintiff in order to improve the prospects for the grant application that had been
rejected prior to his hire on account of the lack of minority participation.  Once he
arrived on campus, his position was in no way like what Wilusz, Hoover, and Avery had
promised.  He was not provided the opportunity or resources to do his own research
and, instead, was required to devote the vast majority of his time to assisting Avery with
her research.  While doing so, Avery treated him differently than his white colleagues
and made statements that could be interpreted as acknowledging the alleged scheme.
Then, after Rocky Mountain RCE received a $40 million grant that plaintiff contends
was the purpose of his being hired, his employment with CSU was not renewed for
another year.  The complaint describes greater involvement in this alleged scheme by
Wilusz, Avery, and Hoover than by the other individual defendants, *see, e.g.*, Docket
No. 147 at 15-16, ¶¶ 69-71; 17, ¶ 77, ¶ 82, ¶ 84; 20, ¶ 99; 20-21, ¶ 104, and the Court
concludes that the allegations adequately state a claim for discrimination in violation of
§ 1981 against defendants Wilusz, Hoover, and Avery.  Thus, plaintiff meets the first

---

[15]As noted above, defendant Brennan conceded that plaintiff's complaint alleged
his personal participation in conduct alleged in the complaint.  That concession,
however, appears limited to plaintiff's allegation that Brennan provided negative job
references for plaintiff.

prong of the qualified immunity analysis by showing that, at this stage, these defendants' actions violated a statutory right.

Defendants Wilusz, Hoover, Brennan, and Avery argue that they are entitled to qualified immunity on plaintiff's § 1981 retaliation claim. "To state a prima facie case of retaliation, [plaintiff] must show that: (1) []he engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Carney v. City and County of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Metzler v. Federal Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006) (footnote omitted)); *Roberts v. Roadway Exp., Inc.*, 149 F.3d 1098, 1103 (10th Cir. 1998) ("These elements are identical for § 1981 and Title VII actions."). The State Defendants contend that plaintiff failed to allege facts showing that the retaliation was "in any way connected to [his] race." Docket No. 136 at 17. The Court has already concluded that plaintiff has alleged facts sufficient to state a claim for racial discrimination against defendants Wilusz, Hoover, and Avery, and, pursuant to § 1981, plaintiff may not be retaliated against for complaining about such mistreatment. *See CBOCS West, Inc. V. Humphries*, 553 U.S. 442, 452 (2008) (noting, in a case confirming the shared interpretation of § 1981 and § 1982, that "this Court has long held that the statutory text of § 1981's sister statute, § 1982, provides protection from retaliation for reasons related to the enforcement of the express statutory right").[16] The

_____

[16]That protection is afforded by § 1981 regardless of a plaintiff's race. *See id.*; *cf. Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1447 (10th Cir. 1988) (joining a "number of courts [that had] recognized that an employee who has been the subject of employer retaliation because of his efforts to vindicate the rights of racial minorities may

24

State Defendants do not challenge whether plaintiff has met his burden of pleading a § 1981 retaliation claim on any other grounds, and the Court concludes that plaintiff has alleged sufficient facts to support such a claim.

When addressing the clearly established prong of the qualified immunity analysis, the State Defendants do not contend that plaintiff failed to meet his burden on plaintiff's § 1981 racial discrimination claim.  Rather, the State Defendants contend that plaintiff cannot meet his burden of showing that the availability of a § 1981 retaliation claim was clearly established at the time of the conduct in this case.  Plaintiff points out, however, the Supreme Court stated in *CBOCS* that "the view that § 1981 encompasses retaliation claims is indeed well embedded in the law."  553 U.S. at 451; *see O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001) ("Both Title VII and § 1981 support a cause of action for retaliation and require a plaintiff to establish the same prima facie elements to recover.").  In their motion, the State Defendants incorrectly argue that, "[a]t the time of the alleged retaliation, federal courts in Colorado did not recognize retaliation claims under § 1981."  Docket No. 136 at 17-18.  To the contrary, the Tenth Circuit had consistently recognized § 1981 retaliation claims.  *See Hysten v. Burlington Northern and Santa Fe Ry.* Co., 296 F.3d 1177, 1183 (10th Cir. 2002); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 n.1 (10th Cir. 1998); *see also Weaks v. Roadway Exp., Inc.*, 259 F. App'x 75, 77 (10th Cir. 2007) (unpublished); *cf. Cottman v. Aurora Public Schools*, 85 F. App'x 83, 86 (10th Cir. 2003) (unpublished); *Craft v. Dillon Companies, Inc.*, 80 F. App'x 92, 92 (10th Cir. 2003) (unpublished).  The

bring an action under § 1981").

State Defendants do not contend otherwise in their reply brief, offering no response to plaintiff's argument that the availability of § 1981 retaliation claims was clearly established. The Court finds that plaintiff has met his burden on that aspect of the qualified immunity analysis.

For the foregoing reasons, plaintiff's § 1981 race discrimination claim, to the extent timely, *see supra*, may proceed against defendants Wilusz, Hoover, and Avery, and his § 1981 retaliation claim may proceed against defendants Wilusz, Brennan, Hoover, and Avery.

**B.      Conspiracy to Discriminate (42 U.S.C. § 1985) and Failure to Prevent Conspiracy (42 U.S.C. § 1986)**

In his second claim for relief, plaintiff alleges that defendants Frank, Perryman, Benjamin, Brennan, Blair, Belisle, Ellis, Beaty, Wilusz, Hoover, and Avery conspired to discriminate against him "in the making, performance, modification and termination of his employment contract, and denied him the enjoyment of equal benefits, privileges, terms and conditions of employment, due to his race" in violation of 42 U.S.C. § 1985. Docket No. 147 at 29, ¶ 158. For the reasons outlined above in regard to plaintiff's § 1983 claim, the Court finds that plaintiff has failed to timely bring his § 1985 claim, which is also subject to a two-year statute of limitations. *See Vaughn v. Krehbiel*, 367 F. Supp. 2d 1305, 1310 (D. Colo. 2005). Even assuming plaintiff had adequately alleged involvement in a conspiracy by all the named defendants, the conduct he describes as furthering the conspiracy, and his awareness of the resulting injury, all occurred prior to January 30, 2006. The only acts he identifies within the two-year time period are his last day of work on January 31, 2006 and the failure of the State

Defendants to reinstate him thereafter.  He was aware of his last day for some time

prior to January 31, 2006 and the conclusory allegation that a group of State

Defendants failed to undo the injury by failing to reinstate him does not toll the accrual

of his claim for damages arising out of the conspiracy.  *See Haynes v. Level 3

Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) ("'An employer's refusal to

undo a discriminatory decision is not a fresh act of discrimination.'") (citation omitted);

*Lever v. Northwestern University*, 979 F.2d 552, 556 (7th Cir. 1992) ("[W]hen . . . a

single discriminatory decision is taken, communicated, and later enforced despite pleas

to relent[,] the time starts with the initial decision.").

Plaintiff alleges that defendants Penley, Perryman, Frank, Cutler, Benjamin, and

Wilusz failed to prevent the conspiracy in violation of 42 U.S.C. § 1986, which prohibits

the failure to prevent a conspiracy by all those "having knowledge that any of the

wrongs conspired to be done, and mentioned in section 1985 of this title, are about to

be committed, and having power to prevent or aid in preventing the commission of the

same."  Absent an actionable § 1985 conspiracy claim, plaintiff's claim under 42 U.S.C.

§ 1986 necessarily fails.  *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1163 (10th

Cir. 1991).

C.       **Racial Discrimination and Retaliation (Title VII)**

The State Defendants contend that plaintiff's Title VII claim is "partially barred by

his failure to exhaust administrative remedies."  Docket No. 136 at 19.  Plaintiff's Title

VII claim alleges that the defendant Colorado Board of Governors of the Colorado State

University System (the "Board") is liable for its agents' failure to reinstate plaintiff and for

providing negative employment references.  Plaintiff did not exhaust his administrative remedies as to any claim for reinstatement.  In the Tenth Circuit, "[e]xhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII."  *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (quoting *Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980)); *see DeWalt v. Meredith Corp.*, 288 F. App'x 484, 490 (10th Cir. 2008) (unpublished) ("Failure to exhaust administrative remedies ... is a jurisdictional bar to suit."); *see also Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII – not merely a condition precedent to suit.").  The Court is permitted to exercise jurisdiction over claims falling within "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."  *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation marks and citation omitted).  "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust."  *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Contrary to his argument in response to the State Defendants' motion, plaintiff nowhere alleges in his Charge of Discrimination that he sought reinstatement or that the failure to reinstate him constituted a form of discrimination.  *See* Docket No. 136-1; Docket No. 136-2.  Rather, he describes the discrimination he believed prevented him from engaging in his research and resulted in his termination and the negative

employment references he alleged were made in retaliation for filing an EEO complaint. *See* Docket No. 136-1 at 3.  Plaintiff does not allege that he made a complaint to the University upon its failure to reinstate him before filing suit.  Therefore, to the extent plaintiff's Title VII claim relies upon the failure to be reinstated, it is unexhausted.

Furthermore, plaintiff did not file his Charge of Discrimination until September 26, 2007.  "Title VII requires a litigant to file a claim within 300 days of the alleged discriminatory conduct."  *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).[17]  Therefore, plaintiff's Title VII claim may only rely upon discriminatory conduct he believes occurred on or after January 16, 2007.  The only acts plaintiff alleges occurred after that date are negative job references in retaliation for his prior complaints.[18]

### D.   Violation of Title VI

Plaintiff's Title VI claim is subject to a two-year statute of limitations.  *See Baker*

---

[17]"[E]ach discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted."  *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotations marks omitted).  However, plaintiff indicated on his Charge of Discrimination that he was subject to a "hostile environment."  Docket No. 136-1 at 1; Docket No. 136-2 at 1.  "Hostile work environment claims are different in kind from discrete acts."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" it follows that a charge is timely if the employee files the charge within 300 days of "any act that is part of the hostile work environment."  *Id.* at 117-18 (citation omitted).  Plaintiff, however, does not advance "hostile work environment" as a basis for his Title VII claim.  *See* Docket No. 147 at 37-38.

[18]State Defendants do not seek dismissal on the ground that the complaint fails to adequately allege a Title VII retaliation claim for conduct occurring after January 16, 2007, arguing that plaintiff's Title VII claim is only "partially barred."

*v. Bd. of Regents of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993).   None of the allegations in support of plaintiff's Title VI claim is timely.   *See* Docket No. 147 at 39-40.   Therefore, the Court will dismiss plaintiff's Title VI claim as untimely.

### E.   Breach of Contract and Promissory Estoppel

In his sixth and seventh claims for relief, plaintiff contends that the Board is liable for breach of contract and under a theory of promissory estoppel.   However, in his response to the State Defendants' motion, plaintiff concedes that the Eleventh Amendment does not permit the Court to exercise pendent jurisdiction over these claims absent the Board's consent.   *See* Docket No. 138 at 24.   Because there has been no consent, the claims will be dismissed.

### F.   Deprivation of Liberty Interest Without Due Process (Fourteenth Amendment pursuant to 42 U.S.C. § 1983)

Plaintiff brings his eighth claim for relief against the Board as well as defendants Frank, Wilusz, Brennan, Hoover, and Avery in their official capacities for deprivation of a liberty interest without due process.   Plaintiff, however, "does not dispute that the Board is immune from §1983 liability under the Eleventh Amendment to the United States Constitution, and should be dismissed from this claim."   Docket No. 138 at 25. Plaintiff, however, is permitted to seek prospective injunctive relief against the individual defendants in their official capacities in order to prevent the "ongoing violation of federal law."   *See Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (relying upon *Ex Parte Young*, 209 U.S. 123 (1908)).   In determining whether the *Ex Parte Young* doctrine permits plaintiff to proceed with his claim, the Court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges

30

an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

Here, plaintiff alleges that his liberty interest was violated by the publication of false statements that prevented him from acquiring new employment.  Even assuming that the complaint adequately alleged a cognizable liberty interest and publication for purposes of making out a § 1983 claim,[19] it fails to allege any ongoing violation of federal law.[20]  Rather, the complaint limits itself to past conduct and alleges that, as a result of such past conduct, plaintiff "has been damaged."  Docket No. 147 at 45, ¶ 264.  There are no allegations regarding when such publication last occurred or any facts upon which it could be inferred that publication is either ongoing or likely to occur again in the future.  *See Bell v. Board of County Comm'rs of Jefferson County*, 343 F. Supp. 2d 1016, 1023-24 (D. Kan. 2004) ("[I]f plaintiff had alleged and produced evidence of imminent publication, he might be entitled to injunctive relief, including a name-clearing hearing and an order prohibiting the dissemination . . .  Here, however, plaintiff has not alleged or produced evidence that publication is likely or imminent.").  The Court will

---

[19]*See Workman v. Jordan*, 32 F.3d 475, 480-81 (10th Cir. 1994) (recognizing that plaintiff had "a liberty interest in his good name and reputation as it affects his protected property interest in continued employment" and that, to make out such a claim, plaintiff would have to show that the statements "impugn[ed] [his] good name, reputation, honor, or integrity," were false, "occur[red] in the course of terminating the employee or must foreclose other employment opportunities," and were published).

[20]In response to State Defendants' motion, plaintiff presents a theory of ongoing violation based upon the presence of certain false statements in plaintiff's personnel file which would be subject to disclosure under a Colorado open records law.  Even assuming such facts could support an ongoing wrong, they are not found in the complaint.

therefore dismiss plaintiff's eighth claim for relief.

G.   **Request for Attorney's Fees**

Finally, the State Defendants request an award of their attorney's fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.  In regard to fees pursuant to 42 U.S.C. § 1988(b), the Court has discretion to grant "the prevailing party . . . a reasonable attorney's fee as part of the costs."  "A prevailing defendant may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." *Hensley v. Eckerhart,* 461 U.S. 424, 429 n.2 (1983); *see Edgerly v. City and County of San Francisco*, 599 F.3d 946, 962 (9th Cir. 2010).  For the reasons discussed above, aspects of plaintiff's federal causes of action will survive the motion to dismiss.  Furthermore, and in any event, the State Defendants provide no briefing or explanation regarding the grounds for granting such an award in relation to plaintiff's federal causes of action.  Nor have they provided support for any particular fee requested.  *See* D.C.COLO.LCivR 54.3 (requiring that, "[u]nless otherwise ordered by the court, a motion for attorney fees shall be supported by one or more affidavits," and "shall include the following for each person for whom fees are claimed: (1) a detailed description of the services rendered, the amount of time spent, the hourly rate, and the total amount claimed; and (2) a summary of relevant qualifications and experience.").

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  The State Defendants provide no

grounds supporting an award of attorney's fees pursuant to 28 U.S.C. § 1927 for any of the federal claims in this action.  Nor have they complied with Local Rule 54.3.  *See* D.C.COLO.LCivR 54.3.  They do, however, argue that fees are particularly appropriate in relation to plaintiff's breach of contract and promissory estoppel claims because plaintiff had conceded these claims should be dismissed prior to filing his third amended complaint.

In response to the motion to dismiss plaintiff's first amended complaint, plaintiff withdrew his breach of contract and promissory estoppel claims against the Board as barred by the Eleventh Amendment.  *See* Docket No. 68-1 at 8.  Plaintiff then reasserted the claims in the operative complaint.  Counsel for plaintiff, however, contends that only the State Defendants' continued refusal to consent has prevented the Court from exercising pendent jurisdiction over the claims.  That argument suggests that reassertion is justified in order to preserve the claims in case State Defendants choose to consent upon survival of any federal causes of action in this Court.  While this explanation does not explain why plaintiff withdrew the claims originally, the Court cannot determine on the present record that the reassertion violates § 1927.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the State Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 136] is GRANTED in part and DENIED in part.  It is further

**ORDERED** that all of plaintiff's claims against defendants Ellis, Inamine, Penley,

Frank, Perryman, Beaty, Blair, Benjamin, and Belisle are dismissed.  It is further

      **ORDERED** that plaintiff's first claim for relief is dismissed to the extent it relies

upon violations of 42 U.S.C. § 1983.  To the extent plaintiff's first claim for relief alleges

racial discrimination in violation of § 1981, it survives as to defendants Wilusz, Hoover,

and Avery and, to the extent it alleges retaliation in violation of § 1981, survives as to

defendants Wilusz, Hoover, Brennan, and Avery, but only in the named defendants'

individual capacities.  It is further

      **ORDERED** that plaintiff's second, third, fifth, sixth, seventh, and eighth claims for

relief are dismissed as to all defendants.  It is further

      **ORDERED** that plaintiff's fourth claim for relief pursuant to Title VII is dismissed

to the extent it seeks reinstatement or relies on conduct occurring prior to January 16,

2007.


      DATED March 28, 2011.

                    BY THE COURT:


                    s/Philip A. Brimmer
                    PHILIP A. BRIMMER
                    United States District Judge